UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

OCT 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JAMAL MITCHELL, #45228-013
F.C.I. QTR. 4-A
        Plaintiff.
P.O. 4000
MANCHESTER, Ky. 40962
            v.

UNITED STATES OF AMERICA,
            Defendant.

Case: 1:07-mc-00434
Assigned To : Roberts, Richard W.
Assign. Date : 10/24/2007
Description: Miscellaneous

## MOTION FOR RETURN OF SEIZED PROPERTY

Now Comes the plaintiff, Jamal Mitchell, by pro se, and pursuant
to Rule 41(g) of the Federal Rules of Criminal Procedure, respectfully
moves this court for an order requiring the government to return
property that was seized but never properly forfeited.

In support thereof, plaintiff states as follows:

1. Jurisdiction exists under 28 U.S.C § 1331

2. Property was seized from safe deposit box number 860 at Suntrust
   Bank, 1100 G street, N.W. Washington.

3. Property was seized from safe deposit box number 6314 at the
   Bank of America branch number 301822, 1502 Pennsylvania avenue,
   N.W, Washington,D.C

4. A 2001 Lexus, Vin JTJHT00W413501601 was seized in the Dominican
   Republic

5. Real Property and premises known as Condominio Plaza Ortega and
   all furniture, fixtures and property located therein was seized
   in the Dominican Republic

6. Sales Contract & Certificate of Title for Dominican property
   seized from Suntrust Bank.

7. $31,000 in United States currency seized from plaintiff in
   Washington,D.C.

(1)

1

8. A 1991 Honda Accord, Vin: JHCB76B6MC051583 was seized in Washington, D.C.

9. As required by 41(g) of the Federal Rules of Criminal Procedure, this motion must be filed in the district where the property was seized.

10. It is submitted that foregoing property was never forfeited as required by statue.

11. Real Property known as Condominio Plaza Ortega was seized on February 15,2002 before preliminary order of forfeiture was issued in violation of statue and Fourth Amendment.

12. Among the items seized from Plaintiff were $732,680 in United States Currency; $502,100 in United States Currency; $31,000 in United States Currency; A 1991 Honda Accord; A 2001 Lexus; Real Property known as Condominio Plaza Ortega Dominican Republic and furniture, fixtures and property located; Sales Contract and Certificate of Title to real property in Dominican Republic.

Wherefore, the plaintiff respectfully moves this Honorable Court to enter an order requiring the government to return:

A. $732,680 in United States Currency.

B. $502,100 in United States Currency

C. $31,000 in United States Currency

D. A 1991 Honda Accord

E. A 2001 lexus

F. Real Property known as Plaza Ortega Dominican Republic

G. Interest on Currency while in Government possession

H. In the event that property was sold, the proceeds of the sale along with interest earned on the currency

Respectfully submitted,

*Jamal Mitchell*
Jamal Mitchell

Dated: *October 16, 2007*


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion For Return Property was sent to:

U.S Department of Justice
U.S Attorney's Office
555 Fourth Street,N.W
Washington,D.C 20530

on this *16th* of *October*,2007


*Jamal Mitchell*
Jamal Mitchell

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED IN OPEN COURT

**JAN 2 4 2002**

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. ○2-25-A |
| v. | Count 1:  21 USC § 846 Conspiracy to Distribute Five Kilograms or More of Cocaine and Fifty Grams or More of Cocaine Base Within 1,000 Feet of a Public School |
| JAMAL MITCHELL also known as "Boo" | |
| | Count 2:  18 USC § 1956(h) Conspiracy to Commit Money Laundering |
| | Forfeiture of Drug-Related Assets  21 USC § 853 |

JANUARY 2002 TERM - At Alexandria

INDICTMENT

COUNT 1

THE GRAND JURY CHARGES THAT:

Beginning in or about 1990, and continuing thereafter up to on or about October 25, 2001, within the Eastern District of Virginia and elsewhere, the defendant, JAMAL MITCHELL, also known as "Boo," did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together with Rodney Alston and Vernon Williams, named as conspirators but not as defendants herein, and with others known and unknown to the grand jury to commit the following offenses against the United States:

1.  To unlawfully, knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

2.  To unlawfully, knowingly and intentionally distribute fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

3.  To unlawfully, knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, and fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine, both Schedule II controlled substances, within one thousand feet of the real property comprising a public secondary school, that is, Dunbar Senior High School, in violation of Title 21, United States Code, Section 860(a).

Ways, Manner and Means to Accomplish the Conspiracy

The primary purpose of the conspiracy was to make as much money as possible through the distribution of cocaine and crack cocaine within the Eastern District of Virginia and elsewhere. The ways, manner and means by which this purpose was carried out included the following:

1.  It was part of the conspiracy that the defendant and his conspirators played different roles, took upon themselves

different tasks and participated in the affairs of the conspiracy
through various criminal acts.

2.   It was further part of the conspiracy that the defendant
and his conspirators made themselves and their services available
at various times throughout the conspiracy and participated in
selected drug trafficking ventures on an "as needed" basis.

3.   It was further part of the conspiracy that the defendant
obtained multiple kilogram quantities of cocaine from various
conspirators which he distributed in the Washington, D.C.
metropolitan area and elsewhere.

4.   It was further part of the conspiracy that the defendant
distributed multiple kilograms quantities of cocaine and cocaine
base to Rodney Alston, Vernon Williams and other members of the
conspiracy.

5.   It was further part of the conspiracy that the defendant
and his conspirators used various residences and apartments to
conduct their drug trafficking activities.

6.   It was further part of the conspiracy that the defendant
used various safe deposit boxes to store the proceeds of his drug
trafficking activities.

7.   It was further part of the conspiracy that the defendant
directed other conspirators to transport and conceal proceeds
generated from his drug trafficking activities.

3

8.   It was further part of the conspiracy that members of the conspiracy converted powder cocaine into crack cocaine for further distribution.

9.   It was further part of the conspiracy that from in or about 1990 through in or about 1992, the defendant distributed two to three ounce quantities of either powder or crack cocaine per week to Rodney Alston, which Alston transported through the Eastern District of Virginia to North Carolina for further distribution.

10.   It was further part of the conspiracy that from in or about 1993 through in or about 1997, the defendant distributed one-eighth to one-half kilogram quantities of either powder or crack cocaine about every two weeks to Rodney Alston, which Alston transported through the Eastern District of Virginia to North Carolina for further distribution.

11.   It was further part of the conspiracy that from in or about 1998 through in or about early 2000, the defendant distributed kilogram quantities of either powder or crack cocaine to Rodney Alston on a monthly basis, which Alston transported through the Eastern District of Virginia to North Carolina for further distribution.

12.   It was further part of the conspiracy that the defendant and his conspirators used long distance telephone

communications, cellular telephones, and telephone paging devices
to facilitate their drug trafficking activities.

13.   It was further part of the conspiracy that the
defendant used and carried firearms in connection with his drug
trafficking activities.

14.   It was further part of the conspiracy that the
defendant and his conspirators purchased expensive automobiles
with drug proceeds, some of which were used in drug trafficking
activities.

15.   It was further part of the conspiracy that the
defendant and his conspirators installed hidden compartments in
their automobiles which were used to store and transport money
and drugs.

16.   It was further part of the conspiracy that the
defendant and his conspirators engaged in monetary transactions
with money derived from drug trafficking.

### OVERT ACTS

In furtherance of the said conspiracy and to effect the
objects thereof, the defendant and his conspirators committed
overt acts in the Eastern District of Virginia and elsewhere
including, but not limited to, the following:

1.   In or about 1990, the defendant met Rodney Alston and
thereafter engaged in repeated drug transactions with him which

5

involved the transportation of cocaine through the Eastern
District of Virginia.

2.  On or about April 27, 1992, in Washington, D.C., the
defendant possessed and distributed cocaine.

3.  On or about November 5, 1993, in Washington, D.C., the
defendant possessed marijuana.

4.  On or about May 19, 1994, in Washington, D.C., the
defendant possessed an unregistered firearm and ammunition.

5.  In or about February, 1997, the defendant directed
Latasha Sinclair to open a safe deposit box at the SunTrust Bank
and to place hundreds of thousand of dollars in drug proceeds in
it.

6.  In or about March, 1998, the defendant directed Latasha
Sinclair, to open a safe deposit box at the Bank of America and
to place hundreds of thousand of dollars in drug proceeds in it.

7.  In or about April, 1998, the defendant purchased a
condominium in the Dominican Republic with the proceeds of his
unlawful drug trafficking activities.

8.  On or about October 14, 1999, Rodney Alston purchased a
2000 Lincoln Continental for $39,165 which he later transferred
to the defendant in partial payment of a drug debt.

9.  On or about December 8, 1999, the defendant purchased a
residence at 436 Clayton Lane, Alexandria, Virginia, with the
proceeds of his unlawful drug trafficking activities.

6

10.   In or about the early part of 2000, Rodney Alston obtained five kilograms of powder cocaine from the defendant which Alston transported through the Eastern District of Virginia for distribution in North Carolina.

11.   In or about May, 2000, the defendant directed Rodney Alston to travel to Ohio to purchase a 2000 Ford Taurus for $22,972 for use in drug trafficking.

12.   On or about June 30, 2000, in North Carolina, the defendant purchased a 2001 Mercedes Benz for $53,355 with the proceeds of his unlawful drug trafficking activities, which he later transferred to his wife.

13.   On or about August 6, 2000, Rodney Alston traveled through the Eastern District of Virginia to deliver money to the defendant for payment of a drug debt.

14.   On or about August 6, 2000, in Washington, D.C., the defendant distributed about one-half pound of marijuana to Rodney Alston which Alston transported through the Eastern District of Virginia to North Carolina for further distribution.

15.   On or about March 31, 2001, in Washington, D.C., the defendant attempted to deliver $31,000 in drug proceeds to a conspirator.

16.   In or about the fall of 2001, in Maryland, the defendant negotiated with Rodney Alston for the purchase of five kilograms of cocaine.

7

17.    On or about September 10, 2001, in Pennsylvania, the defendant purchased a 1998 Toyota Camry for $10,250 with the proceeds of his unlawful drug trafficking activities.

(In violation of Title 21, United States Code, Section 846)

## COUNT 2

THE GRAND JURY FURTHER CHARGES THAT:

From in or about 1997 through on or about October 25, 2001, within the Eastern District of Virginia and elsewhere, the defendant, JAMAL MITCHELL, also known as "Boo," did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together with others to unlawfully, knowingly and intentionally engage in monetary transactions in criminally derived property of a value greater than $10,000, which was in fact derived from specified unlawful activity, that is, the distribution of cocaine, in violation of Title 18, United States Code, Sections 1956(h).

### Ways, Manner and Means to Accomplish the Conspiracy

The primary purpose of the conspiracy was for the defendant and his conspirators to launder the proceeds of unlawful drug trafficking through the purchase of automobiles, real property and other valuable property and the concealment of drug proceeds. The ways, manner and means by which this purpose was carried out included the ways, manner and means alleged in Count 1 of this Indictment which are hereby realleged and fully incorporated herein by reference.

### OVERT ACTS

In furtherance of the said conspiracy and to effect the objects thereof, the defendant and his conspirators committed

9

overt acts in the Eastern District of Virginia and elsewhere
including, but not limited to, the overt acts alleged in Count 1
of this Indictment which are hereby realleged and fully
incorporated herein by reference.

(In violation of Title 18, United States Code, Section 1956(h))

## FORFEITURE OF DRUG-RELATED ASSETS

THE GRAND JURY FURTHER CHARGES THAT:

The defendant, JAMAL MITCHELL, also known as "Boo," if convicted of Count 1 of this indictment, shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation; and any other property of the defendant as a substitute for such property; including, but not limited to the following:

1.  $31,000 in United States currency seized from Jamal Mitchell in Washington, D.C., on March 31, 2001.

2.  $5,962 in United States currency, miscellaneous jewelry, and miscellaneous computer and electronic equipment seized from 436 Clayton Lane, Alexandria, Virginia, on October 25, 2001.

3.  $2,000 in United States currency, miscellaneous jewelry, and miscellaneous computer, electronic and camera equipment seized from 5501 Ellerbie Street, Lanham, Maryland, on October 25, 2001.

4.  A 2000 Ford Taurus, VIN: 1FAFP56S0YG216614, seized on October 25, 2001.

5.  A 2000 Mercedes Benz CLK-320, VIN: WDBLK65G7YT053724, seized on October 25, 2001.

11

6.  A 1999 Land Rover, VIN: SALPA1243XA406790, seized on October 25, 2001.

7.  A 1991 Honda Accord, VIN: JHMCB7686MC051583, seized on October 31, 2001.

8.  A 1998 Toyota Camry, VIN: 4T1BG22KXWU858541, seized on October 30, 2001.

9.  $732,680 in United States currency seized from safe deposit box 860 at the SunTrust Bank, Washington, D.C., on October 29, 2001.

10.  $502,100 in United States currency seized from safe deposit box 6314 at the Bank of America, Washington, D.C., on October 30, 2001.

11.  The real property and premises known as 436 Clayton Lane, Alexandria, Virginia.

12.  The real property and premises known as 5501 Ellerbie Street, Lanham, Maryland.

13.  The real property and premises known as Condominio Plaza Ortega, Apartment 402-C, 4th Floor, Block C, Dominican Republic.

14.  A Lexus Sports Utility Vehicle located in the Dominican Republic.

COPY

1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

x- - - - - - - - - - - - - - - - - -X
                                    :
UNITED STATES OF AMERICA            :
                                    :
            -vs-                    : CRIMINAL ACTION
                                    : NO. 02-25-A
JAMAL MITCHELL,                     :
                                    :
                Defendant.          :
                                    :
X- - - - - - - - - - - - - - - - - -X

                              Wednesday, July 24, 2002

                              Alexandria, Virginia

          Transcript of sentencing proceedings in the

above-captioned matter.

              BEFORE:

              The Honorable JAMES C. CACHERIS, Judge
                  United States District Court

              APPEARANCES:

              FOR THE UNITED STATES:

              THOMAS HOLLENHORST, ESQ.
              EUGENE ROSSI, ESQ.
              UNITED STATES ATTORNEY'S OFFICE
              2100 Jamieson Avenue
              Alexandria, Virginia 22314-5794


                      *   *   *
                  DON McCOY, RMR
              OFFICIAL COURT REPORTER
                  (703) 683-3668

42

1   I put my wife through this.  I just take full

2   responsibility for my actions, and I accept whatever

3   sentence the Court imposes on me.

4           And one more thing, Your Honor.  I would just like

5   to tell the Court that I am oversatisfied with the

6   representation I received from Mr. Zwerling and Mr.

7   Nachmanoff.  Even if the outcome had been different, I'm

8   totally satisfied.  I don't think I could have chose better

9   counsel.  That's it, Your Honor.

10          THE COURT:  On count I, it will be 360 months.  I'm

11  going to commit you to the Bureau of Prisons for 360

12  months; Count II, 120 months concurrent; Count I, ten-year

13  supervised release; Count II, a three-year supervised

14  release that will run concurrent.

15          Special conditions are substance-abuse testing or

16  treatment at the direction of the probation officer, which

17  may include residential treatment at your expense.

18          I find you are unable to pay a fine, the cost of

19  imprisonment or supervised release.

20          The reason for the Court's sentence is punishment

21  and deterrence.  I feel that the minimum 360 months

22  accomplishes that purpose.  The alternate sentence would be

23  that if you were to drop one or two levels to a 40 or 41,

24  360 months would be the sentence that the Court would

25  impose.

43

```
 1              I advise you of your right of appeal.  You have the

 2        right to appeal this case.  You must note it within ten

 3        days, or you may lose that right.

 4              Mr. Zwerling and Mr. Nachmanoff, will you all

 5        undertake the appeal for him?  Are you able to do it?

 6              MR. NACHMANOFF:  Your Honor, the Office of the

 7        Federal Public Defender has been involved in this case, and

 8        we intend to pursue the appeal if the Court wants us to.

 9              THE COURT:  Very well.  Thank you.

10              (Whereupon, at 3:00 o'clock p.m., the sentencing

11        proceedings in the above-captioned matter were concluded,

12        and court stood adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

AO 245 S (Rev. 2/99)(EDVA rev.1) Sheet    Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Alexandria Division



UNITED STATES OF AMERICA

    v.                                     Case Number 1:02CR00025-001

**JAMAL MITCHELL,**
**AKA: "Boo"**

Defendant.

## JUDGMENT IN A CRIMINAL CASE

    The defendant, JAMAL MITCHELL, was represented by John Zwerling, Esquire and Michael Nachmanoff, Esquire.

    The defendant was found guilty on counts 1 and 2 after a plea of not guilty. Accordingly, the defendant is adjudged guilty of the following count(s), involving the indicated offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC 846 | Conspiracy to Distribute Five (5) Kilograms or More of Cocaine and Fifty (50) Grams or More of Cocaine Base Within 1,000 Feet of a Public School | 10-25-01 | 1 |
| 18 USC 1956(h) | Conspiracy to Commit Money Laundering | 10-25-01 | 2 |

    As pronounced on July 24, 2002, the defendant is sentenced as provided in pages 2 through 5 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

    IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Signed this 24 day of July, 2002.

_James C. Cacheris_
United States District Judge

Defendant's SSN: 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    USM#: 45228-083
Defendant's Date of Birth: 09-18-72
Defendant's Mailing Address: 436 Clayton Lane, Alexandria, VA 22314
Defendant's Residence Address: Alexandria Jail, 2001 Mill Road, Alexandria, VA 22314

AO 245 S (Rev. 2/99)(EDVA rev.1) Sheet   Imprisonment

Defendant: JAMAL MITCHELL                                      Judgment--Page 2 of 5
Case Number:  1:02CR00025-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of THREE HUNDRED SIXTY (360) MONTHS as to Count 1; and ONE HUNDRED TWENTY (120) MONTHS as to Count 2, to run concurrent with Count 1.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this Judgment as follows:

_____

_____
_____
_____

Defendant delivered on _____ to _____ at _____
_____, with a certified copy of this Judgment.

c: P.O. (2) (3)
   Mshl. (4) (2)
   U.S.Atty.                    _____
   U.S.Coll.                              United States Marshal
   Dft. Cnsl.            By
   PTS                          _____
   Financial                              Deputy Marshal
   Registrar
   ob

# UNITED STATES CODE, TITLE 21

Sec. 853.  Criminal forfeitures

(a)    Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

# FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 32.2.  Criminal Forfeiture[*]

(a)  Notice to the Defendant.  A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.

(b)  Entering a Preliminary Order of Forfeiture.

(1)  In General.  As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute.  If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.  The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

(2)  Preliminary Order.  If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

(3)  Seizing Property.  The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property

---

[*]  This is the text of the rule as it read as of December 1, 2002.  The rule was revised as part of the general restyling of the Criminal Rules and the changes are intended to be stylistic only. Fed. R. Crim. P. 32.2, advis. comm. notes, 2002 amdts.

subject to forfeiture; to conduct any discovery the court considers proper in identifying, locating, or disposing of the property; and to commence proceedings that comply with any statutes governing third-party rights. At sentencing—or at any time before sentencing if the defendant consents—the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment. The court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal.

(4) Jury Determination. Upon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

(c) Ancillary Proceeding; Entering a Final Order of Forfeiture.

(1) In General. If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, but no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment.

(A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

(B) After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.

(2) Entering a Final Order. When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights. If no third party files a timely petition, the preliminary order becomes the final order of forfeiture if the court finds that the defendant (or any combination of defendants convicted in the case) had an interest in the property that is forfeitable under the

applicable statute. The defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to a codefendant or third party; nor may a third party object to the final order on the ground that the third party had an interest in the property.

(3) Multiple Petitions. If multiple third- party petitions are filed in the same case, an order dismissing or granting one petition is not appealable until rulings are made on all the petitions, unless the court determines that there is no just reason for delay.

(4)   Ancillary Proceeding Not Part of Sentencing.    An ancillary proceeding is not part of sentencing.

(d) Stay Pending Appeal. If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review. A stay does not delay the ancillary proceeding or the determination of a third party's rights or interests. If the court rules in favor of any third party while an appeal is pending, the court may amend the order of forfeiture but must not transfer any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record.

(e)  Subsequently Located Property; Substitute Property.

(1) In General. On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that:

(A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or

(B) is substitute property that qualifies for forfeiture under an applicable statute.

(2) Procedure. If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must:

(A) enter an order forfeiting that property, or amend an existing preliminary or final order to include it; and

       (B) if a third party files a petition claiming an interest in the property, conduct an ancillary proceeding under Rule 32.2(c).

       (3)   Jury Trial Limited.   There is no right to a jury trial under Rule 32.2(e).

AO93(Rev.5/85)Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA   FILED

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

NOV 1 5 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Safe deposit box number 860 at the
Suntrust Bank, 1100 G Street, NW,
Washington, D.C.

SEARCH WARRANT

CASE NUMBER:

TO:   Vincent B. Lisi       and any Authorized Officer of the United States

Affidavit(s) having been made before me by Special Agent Vincent B. Lisi  who has reason to believe that ☐ on the person or ☒ on the premises known as (name, description and or location)

Safe deposit box number 860 at the Suntrust Bank, 1100 G Street, NW,
Washington, D.C.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property)

See Attachment A

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before ____Nov. 6, 2001____
(Date)

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☑ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

____OCT 2 6 2001 @ 3:25 PM____    at Washington, D.C.

Date and Time Issued

_____    _____
Name and Title of Judicial Officer            Signature of Judicial Officer

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 10/26/01 | 10/29/01 , 11:00 AM | Ronald Sahadeo, SunTrust Bank, Assistant President |

INVENTORY MADE IN THE PRESENCE OF    SA Daniel Foore   SA Lisa Miller

### INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

①  $ 732,680. 00 — in US Currency *

②  Real Estate Sales Contract & Certificate of Title
to real property in Dominican Republic

* Although the receipt reflects the amount as
$733,200.00, a subsequent examination revealed
$250.00 in counterfeit bills, and $10 and $20 bills in a
bundle of $50's. Thus, the true amount was
$732,680.00, as verified by Riggs Bank.

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_Dan Foore / FBI_

Subscribed, sworn to, and returned before me this date.

_[signature]_                                    11-15-01
U.S. Judge or U.S. Magistrate Judge                    Date

AO93(Rev.5/85)Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Safe deposit box number 6314 at the Bank of
America, branch number 301822, 1501 Pennsylvania
Avenue, NW, Washington, D.C.

**FILED**

NOV 1 5 2001

NANCY MAYER WHITTINGTON, CLERK
U.S DISTRICT COURT

SEARCH WARRANT

CASE NUMBER:

0 1

TO: __Vincent B. Lisi__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by Special Agent Vincent B. Lisi who has reason to believe that ☐ on the
person or ☒ on the premises known as (name, description and or location)

Safe deposit box number 6314 at the Bank of America, branch number 301822, 1501 Pennsylvania
Avenue, NW, Washington, D.C.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property)

See Attachment A

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before __Nov. 6, 2001__
(Date)

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search ☑ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable
cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

OCT 2 6 2001
6:15 PM
_____    at Washington, D.C.
Date and Time Issued

_____    _____
Name and Title of Judicial Officer        Signature of Judicial Officer

**RETURN**

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 10/26/01 | 10/30/01 | Brenda Burrell, Bank of America |

| INVENTORY MADE IN THE PRESENCE OF | SA Lisa Miller,   SA Daniel Fox |
|---|---|

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

$502,100.⁰⁰ * in US Currency

\* Although the receipt reflects a value of
$480,000.⁰⁰, subsequent examination of the
currency revealed the true value was
$502,100.⁰⁰.

**CERTIFICATION**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_Daniel Fox_ / FBI

Subscribed, sworn to, and returned before me this date.

_____        11-15-01
U.S. Judge or U.S. Magistrate Judge          Date




Depto. de Drogas y Estupefacientes
de la Procuraduría Fiscal del D. N.
Santo Domingo, Rep. Dom.

Dirección Nacional de Control de Drogas (D.N.C.D.)

REPÚBLICA DOMINICANA
PROCURADURÍA FISCAL DEL DISTRITO NACIONAL

ACTA DE ALLANAMIENTO

Ref: Caso No. ...................

En Santo Domingo, Distrito Nacional, Capital de la República Dominicana, a los _15 días_

del Mes de _febrero_ del _2002_ A las _11:30 AM_ horas.

Yo. _Lic. Nicolás de Js. Bonilla R._

Abogado ayudante del Procurador Fiscal del Distrito Nacional, actuando en su nombre y representación,

en cumplimiento de lo dispuesto en los artículos 32 y 36 del Código de Procedimiento Criminal, auxiliado por

_8_ agentes de la Dirección Nacional de Control de Drogas,

Comandados por _1° tte Bladimir Porte Encarnación_

procedí a dirigir la realización de la diligencia de allanamiento en _c/ Selene #20_

_Edf. Plaza Ortega Apt. 402-C_

Allí fuimos atendidos por _Carmen Lara_

_____ Cédula No. _001-0150685-5_

Encontrándose además en el mismo las siguientes personas: _Pascale Florridor_

_____

Dicho bien presenta las siguientes características: _Apto. dedicado a vivienda_
_familiar, actualmente inhabitada, lujosamente_
_amueblado._

DEFENDANT'S
EXHIBIT
4

Informadas las personas del objeto de la diligencia, se procedió a realizar un registro minucioso del bien, obteniendo

como resultado lo siguiente: _En la mesita de noche de la habitación_
_principal se encontró un juego de llave y un sobre_
_conteniendo la matrícula de vehículo de estos No._
_2042436, correspondiente al vehículo Marca_
_bmus, color Blanco, Chasis No. JTJHT00W413_
_501601; placa No. GB-F789. En la sala_
_se encontró un portafolio conteniendo en su_

interior una computadora portátil marca Sony con sus accesorios así como un cajita con cinco (5) minidisco así como varios documentos conteniendo nota, y numeros telefónicos.

En virtud de lo anterior, se procedió a la ocupación de se procedió a la ocupación de los objeto y documento descrito precedentemente así como del vehículo el que estaba esta cionado en el parqueo correspondiente al apartamento.

Efectuado el pesaje de la sustancia, arrojo un total de

Interrogados los presentes sobre la naturaleza, procedencia y pertenencia de lo ocupado, manifestaron

En virtud de lo anterior, se procedió a la aprehensión de

Terminada la diligencia, se firma por los que en ella intervinieron, siendo las _1:00 PM_

Personas que se encontraban en el lugar _____

_Carpus Kaoff_

_M.S. Cola_

Personas aprehendidas: _____

_Vladimir Portes_
Oficial Actuante

El Ayudante Fiscal

Depto. de Drogas y Estupefacientes
de la Procuraduría Fiscal del D. N.
Santo Domingo, Rep. Dom.

Depto. de Drogas y Estupefacientes
de la Procuraduría Fiscal del D. N.
Santo Domingo, Rep. Dom.

Dirección Nacional de Control de Drogas (D.N.C.D.)

TRANSLATION FROM SPANISH

Dominican Republic
Office of the Prosecuting Attorney
of the National District
Search Warrant

Ref. Case No.: [blank]

In Santo Domingo, National District, Capital of the Dominincan Republic, at 11:30 AM on February 15, 2002, I, Nicolas de Js. Bonilla R., an attorney and assistant to the Prosecuting Attorney of the National District, acting in his name and as his representative, and in accordance with the provisions of Articles 32 and 36 of the Code of Criminal Procedure, and the assistance of eight officers from the National Drug Control Office under the comand of First Lieutenant Bladimir Porte Encarnacion, proceeded to direct a search at "c/Selene #20 Ed. Plaza Ortega Apt. 402-C."

We were met there by: Carmen Lara (ID no. 001-0150685-S).

The following persons were also at that location: Pascale Florridor.

This property had the following characteristics: an apartment for use as a family dwelling which was luxuriously furnished and uninhabited at the present time.

The [aforementioned] persons were informed of the reasons for these proceedings, and a careful search was made of this property, which yielded the following results: on the little night table in the main bedroom there were a set of keys and an envelope which contained the registration for motor vehicle no. 2042436, which was a white Lexus with chassis no. JTJHT00 W413501601 and license plate number GB-F789. In the living room we found a briefcase with a Sony laptop computer and assesories inside, as well as little box with five (5) mini-discs. There were also various documents with notes and telephone numbers.

In view of the above, we proceeded to seize: we proceeded to seize the objects and documents described previously, as well as the vehicle, which was parked in the apartment's parking lot.

The substance was weighed and came to a total of: [blank]

Those present were questioned as to the nature, origins and ownership of the items seized, and stated: [blank]

1

In view of the preceding, we proceeded to arrest: [blank]

These proceedings were completed and signed by those who participated, at 1:00PM.

The persons who were at that location:

[signed] Carmen Racaff [ph.]
[illegible signature]

Persons arrested: [blank]

[signed] Vladimir Portes [sic]
Acting Officer

[illegible signature]
Assistant to the Prosecutor

[stamps of the Drug Department of the Office of the Prosecuting Attorney of the National District, Santo Domingo, Dominican Republic]

2

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
FILED
IN OPEN COURT

APR 17 2002

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL NO. 02-25-A
                            )
JAMAL MITCHELL              )

## ORDER OF FORFEITURE

WHEREAS, on April 17, 2002, the defendant, JAMAL MITCHELL,
was convicted of Count 1 of the indictment which charged him with
conspiracy to distribute five kilograms or more of a mixture and
substance containing a detectable amount of cocaine, fifty grams
or more of a mixture and substance containing a detectable amount
of cocaine base, all within 1,000 feet of a public secondary
school, in violation of 21 U.S.C. § 846.

AND WHEREAS, the government alleged in the indictment and a
supplemental Bill of Particulars that the below-listed property
was subject to forfeiture if the defendant was convicted of Count
1 of the indictment;

AND WHEREAS, the defense waived a jury trial on all issues
relating to forfeiture;

AND WHEREAS, the Court finds that the government has proven
beyond a reasonable doubt that the below-listed property is
property constituting or derived from the proceeds the defendant
obtained, directly or indirectly, as the result of the violation
charged in Count 1;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
THAT:

1.   The following property is forfeited to the United States
of America pursuant to Title 21, United States Code, Section 853:

a.   $732,680 in United States currency seized from safe
deposit box 860 at the SunTrust Bank, Washington, D.C., on
October 29, 2001.

b.   $502,100 in United States currency seized from safe
deposit box 6314 at the Bank of America, Washington, D.C., on
October 30, 2001.

c.   $31,000 in United States currency seized from Jamal
Mitchell in Washington, D.C., on March 31, 2001.

d.   $5,962 in United States currency, miscellaneous
jewelry, and miscellaneous computer and electronic equipment
seized from 436 Clayton Lane, Alexandria, Virginia, on October
25, 2001.

e.   $2,000 in United States currency, miscellaneous
jewelry, and miscellaneous computer, electronic and camera
equipment seized from 5501 Ellerbie Street, Lanham, Maryland, on
October 25, 2001.

f.   A 2001 Toyota Lexus, VIN: JTJHT00W413501601, seized
on February 15, 2002.

g.   A 2000 Ford Taurus, VIN: 1FAFP56S0YG216614, seized
on October 25, 2001.

h.  A 2000 Mercedes Benz CALK-320, VIN: WDBLK6SG7YT053724, seized on October 25, 2001.

i.  A 1999 Land Rover, VIN: SALPA1243XA406790, seized on October 25, 2001.

j.  A 1991 Honda Accord, VIN: JHMCB7686MC051583, seized on October 25, 2001.

k.  A 1998 Toyota Camry, VIN: 4T1BG22KXWU858541, seized on October 30, 2001.

l.  The real property and premises known as 436 Clayton Lane, Alexandria, Virginia, and all furniture, fixtures and property located therein.

m.  The real property and premises known as 5501 Ellerbie Street, Lanham, Maryland, and all furniture, fixtures and property located therein.

n.  The real property and premises known as Condominio Plaza Ortega, Apartment 402-C, 4th Floor, Block C, Dominican Republic, and all furniture, fixtures and property located therein.

2.  The Attorney General is authorized to seize the property.

3.  The United States shall publish notice of this order and of its intent to dispose of the property one time in such manner as the Attorney General may direct.  The United States shall also, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in the property.

4.  Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the final publication of notice or his receipt of notice, whichever is earlier, petition the court pursuant to 21 U.S.C. § 853(n) for a hearing to adjudicate the validity of his alleged interest in the property.

5.  Following the Court's disposition of all petitions filed, or if no such petitions filed within the time prescribed by law, upon proof of publication and proof of notice to any persons known to have alleged an interest in the property, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

_____
UNITED STATES DISTRICT JUDGE

Dated: 4/17/0
Alexandria, Virginia